UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
ANDREW PETER KELLY,

                Plaintiff,            **MEMORANDUM AND ORDER**
                                            19-CV-1363 (KAM)
    -against-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
--------------------------------------X
KIYO A. MATSUMOTO, United States District Judge:

        Plaintiff Andrew Peter Kelly appeals the final decision of the Commissioner of Social Security ("defendant" or the "Commissioner"), which found plaintiff not disabled in the absence of substance abuse, and therefore, not entitled to disability insurance benefits ("DIB") or supplemental security income ("SSI") under the Social Security Act.  Before the court are the parties' motions for judgment on the pleadings.  For the reasons set forth below, plaintiff's motion for judgment on the pleadings is respectfully DENIED and the Commissioner's cross-motion for judgment on the pleadings is GRANTED.

**BACKGROUND**

        The parties submitted a Joint Stipulation of Facts detailing plaintiff's medical history and the administrative hearing testimony, which the court hereby incorporates by reference.  (*See* ECF No. 15-1, Joint Stipulation of Facts ("Stip.").)

Plaintiff filed an application for DIB on August 21, 2015 and an application for SSI on September 9, 2015, alleging a disability beginning March 3, 2013.  (ECF No. 16, Administrative Transcript ("Tr.") 246-56.)  Plaintiff's claims were denied on November 6, 2015.  (*Id.* at 116-131.)  On December 9, 2015, plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 132.)  Plaintiff's hearing took place via video before ALJ Dina Loewy on November 21, 2017.  (*Id.* at 35-59.)  Plaintiff appeared and testified from Staten Island, New York, and was represented by his attorney, Harold Skovronsky.  (*Id.*)  The ALJ presided over the hearing from Jersey City, New Jersey.  (*Id.*)

On January 31, 2018, the ALJ found that plaintiff was not disabled under the Social Security Act.  (*Id.* at 7-29.)  On March 13, 2018, plaintiff requested review of the ALJ's decision (*id.* at 4), which the Appeals Council denied on January 10, 2019, thus making the ALJ's decision the final decision of the Commissioner.  (*Id.* at 1-6.)  This appeal followed.  (*See generally* ECF No. 1, Complaint ("Compl.").)

## DISCUSSION

### I.   Standard of Review

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits.  42 U.S.C. §§ 405(g),

1383(c)(3).  The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).  Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.'"  *Burgess*, 537 F.3d at 127 (quoting *Shaw*, 221 F.3d at 131 (citation omitted)).

"The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'"  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citations omitted, emphasis in original).  Inquiry into legal error requires the court to ask whether "'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## II.  Determination of Disability

A claimant must be "disabled" within the meaning of the Act to receive disability benefits.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant qualifies as disabled when he is unable

to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner prescribe a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of disabled. *See* 20 C.F.R. § 404.1520. If the ALJ determines that the claimant is or is not disabled at any step, the analysis stops. "The claimant has the general burden of proving . . . his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess*, 537 F.3d at 128 (internal quotation marks and citations omitted). "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform [his] past relevant work [and considering his residual functional capacity, age, education, and work experience], is able to engage in gainful employment

within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).  If the Commissioner finds a combination of impairments, the Commissioner must also consider whether "the combined effect of all of [a claimant's] impairment[s]" establish the claimant's eligibility for Social Security benefits.  20 C.F.R. § 404.1523(c); *see also id.* § 416.945(a)(2).

Where a claimant demonstrates alcohol and/or substance abuse problems, the ALJ must assess whether the substance abuse disorder is a "contributing factor" material to the determination of disability.  *See* 42 U.S.C. §§ 423(d)(2)(c), 1382(a)(3)(J); SSR 13-2p, 2013 WL 621536.  The SSA provides that "[a]n individual shall not be considered . . . disabled . . . if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled." *Cage*, 692 F.3d at 123 (citing 42 U.S.C. §

1392(c)(a)(3)(J)).  Thus, if the ALJ finds that the claimant is disabled under the standard sequential evaluation analysis, and there is medical evidence of the plaintiff's drug or alcohol use disorder, the ALJ must then determine whether he would still find the plaintiff disabled if he stopped using drugs or alcohol.  *See DiBenedetto v. Colvin*, No. 12-cv-1528, 2014 WL 1154093, at *2 (N.D.N.Y. Mar. 21, 2014).  In so assessing, the ALJ must determine which, if any, of the claimant's limitations would remain if the claimant were to stop the drug or alcohol use and if any of the remaining limitations would render the claimant disabled.  *See* 20 C.F.R §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); 404.1535(b)(2)(ii), 416.935(b)(2)(ii).  As part of his burden of demonstrating disability, the plaintiff must show that his drug addiction or alcoholism is not material to his disability.  *See Cage*, 692 F.3d at 123-25.

**III. The ALJ's Disability Determination**

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since March 3, 2013, the alleged onset date.[1]  (Tr. at 13.)

---

[1]     The ALJ made this determination notwithstanding treatment records indicating that plaintiff returned to work in 2017.  (Tr. at 13, 1218, 1221, 1224.)

At step two, the ALJ found that plaintiff suffered from the following severe impairments: "degenerative disc disease of the cervical spine; degenerative joint disease of the bilateral knees; neuropathy; status-post mandible fracture, polysubstance abuse; anxiety; and depression." (*Id.*) The ALJ thereafter determined that plaintiff's anxiety and depression were non-severe in the absence of substance abuse. (*Id.*)

At step three, the ALJ determined that plaintiff's impairments in combination, including his substance use disorder, met the requirements of Listings 12.04 and 12.06. 20 C.F.R. Part 404, Subpart P, Appendix 1. As required by federal regulations, the ALJ then considered whether the impairments identified above would meet the requirements under Listings 12.04 and 12.06, absent plaintiff's substance abuse. (Tr. at 15; *see* 20 C.F.R. § 404.1535.) The ALJ then found that, in the absence of substance abuse, plaintiff's other impairments or combination of impairments, degenerative cervical disc disease and joint disease of the bilateral knees, neuropathy, and status-post mandible fracture, did not meet or medically equal a listed impairment. (*Id.* at 18.)

Based on these determinations, the ALJ concluded that, in the absence of substance abuse, plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that plaintiff could:

occasionally push or pull; occasionally climb ramps or stairs (though rarely full flights); never climb ladders, ropes, or scaffolds; occasionally balance or stoop, never kneel; occasionally crouch; never crawl; and never perform repetitive or extreme neck movements. (*Id.*)

At step four, the ALJ found that plaintiff would be able to perform his past relevant work as a manager of an auto shop (which, as plaintiff described, was light and skilled work) if he remained sober. (*Id.* at 21.) Finally, the ALJ found that plaintiff's substance use disorder was a "contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use." (*Id.*) Because the ALJ found that plaintiff could perform past work and that his substance use disorder was a contributing material factor, the ALJ concluded that plaintiff was not disabled and did not continue to the fifth step of the five-step analysis. (*Id.*)

### IV. The ALJ Properly Treated Plaintiff's Substance Abuse as a Contributing Factor Material to the Determination of Disability

First, plaintiff contends that the ALJ erred in treating plaintiff's substance abuse as a contributing factor material to plaintiff's disability because plaintiff had abstained from narcotics since 2013 and alcohol since 2014. (*See* ECF No. 13, Plaintiff's Memorandum of Law in Support of

Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem.") at 11.)

As discussed above, a claimant is not considered disabled for the purposes of the Social Security Act if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the claimant is disabled.  42 U.S.C. § 423(d)(2)(C).  When the record contains medical evidence of substance abuse, the Commissioner should evaluate which of the claimant's "current physical and mental limitations ... would remain if [he] stopped using drugs or alcohol and then determine whether any or all of [these] remaining limitations would be disabling."  20 C.F.R. § 404.1535(b)(2).  If the remaining limitations would not be disabling, then drug addiction or alcoholism is a contributing factor material to the determination of disability.  20 C.F.R. § 404.1535(b)(2)(i).  When the record reflects drug or alcohol abuse, the claimant bears the burden of proving that substance abuse is not a contributing factor material to the disability determination.  *Eltayyeb v. Barnhart*, No. 02-cv-925 (MBM), 2003 WL 22888801, at *4 (S.D.N.Y. Dec. 8, 2003).

Here, the ALJ found that plaintiff's degenerative disc disease of the cervical spine, degenerative joint disease of the bilateral knees, neuropathy, status-post mandible fracture, polysubstance abuse, anxiety, and depression were severe.  (Tr.

13.)  Though plaintiff's physical impairments did not meet or
medically equal any relevant listed impairments (*id.* at 18),
plaintiff's mental impairments -- when coupled with his
substance abuse -- met listed impairments 12.04 and 12.06.  (*Id.*
at 13.)  Because there was evidence of plaintiff's prior drug
addiction and alcoholism, the ALJ then properly considered
whether plaintiff's substance abuse was a contributing factor
material to the determination of plaintiff's mental disability.
(*Id.* at 14-17; *see* 20 C.F.R. § 416.935(a).)

        Substantial evidence supports the ALJ's determination
that plaintiff's substance use was a contributing factor
material to the determination of plaintiff's disability between
March 3, 2013 and November 2014.  The ALJ properly recognized
that plaintiff had been sober since November 2014, and
considered the effect of substance abuse on plaintiff's mental
impairments from the alleged onset date of plaintiff's
disability to the date of plaintiff's sobriety.  (Tr. at 14.)

        The record indicates that plaintiff battled both with
substance abuse and mental health issues between March 3, 2013
and November 2014.  In July 2013, at plaintiff's incarceration
intake interview, plaintiff stated that he wanted help for
alcohol abuse; he also tested positive for benzodiazepines and
cocaine.  (Stip. ¶¶ 51-53.)  Following plaintiff's
detoxification, Dr. Seth Brum, M.D., prescribed plaintiff Celexa

10

and Zyprexa for depression and mental disorders. (*Id.* ¶¶ 55-
56.)  In a letter to the court, Dr. Brum attested that plaintiff
had a history of alcohol abuse and that he treated plaintiff for
anxiety, bipolar disorder, and insomnia since 2011, and
prescribed him (among other medications) Celexa and Seroquel.
(*Id.* ¶¶ 58-62.)  Plaintiff was incarcerated again for driving
while intoxicated in March 2014.  (*Id.* ¶ 63.)  Upon arrival at
prison, plaintiff was treated for alcohol withdrawal.  (*Id.* ¶
66.)  Following plaintiff's incarceration intake interview, Dr.
Victoria Sdrougias, Ph.D., diagnosed plaintiff with mood
disorder, alcohol dependence, and cocaine abuse. (*Id.* ¶ 74.)

        Further, in concluding that plaintiff's substance use
during this period was a contributing factor material to his
disability, the ALJ considered plaintiff's own statements
regarding the effect of substance use on his symptoms and
functioning, and compared plaintiff's symptoms and functioning
during this period of substance abuse to his symptoms and
functioning while sober. (*See generally* Tr. at 14-17.)  The ALJ
first looked to a psychiatric assessment with a nurse
practitioner in March 2014, during which plaintiff reported
that: "I could be the nicest guy, but once I drink, I'm
fighting, I'm just nuts." (*Id.*, Tr. at 969.)  The ALJ noted
that plaintiff reported: several arrests for driving under the
influence, substance abuse leading to his incarceration and the

11

loss of his business, and substance abuse as a primary factor in his three failed marriages. (Tr. at 14-17.) The nurse practitioner diagnosed plaintiff with mood disorder, alcohol dependence and cocaine abuse, and assessed plaintiff's Global Assessment of Functioning ("GAF") score at 51-60 (indicative of moderate symptoms). (*Id.*) The ALJ noted that plaintiff quickly began to report improvement in his mood and stability in his symptoms once on medication. (*Id.*) After his release from prison, plaintiff sought treatment at Staten Island Mental Health Society ("SIMHS") in August 2015 to maintain his sobriety, telling his psychiatrist that he had "lost everything due to his drinking." (*Id.*) Plaintiff's treatment summaries from SIMHS also diagnose him with cocaine and alcohol abuse. (Tr. at 430, 586.) The ALJ also considered the fact that plaintiff returned to work in 2017 in the automotive field and managed other employees, evidencing his ability to interact with others, apply information, and concentrate. (*Id.* at 13, 16; *see* Tr. 1221-22; *see also* Tr. 1218, 1224 (also noting work in 2017).) This finding was consistent with plaintiff's previous statement that he had previously owned his own successful auto salvage business for many years, until his substance abuse interfered. (*Id.* at 16; *see* Tr. at 386, 430.)

This court finds that the ALJ's determination that plaintiff's substance abuse was a contributing factor material

to the disability determination was proper and supported by substantial evidence. *See* SSR 13-2P, at *8 (S.S.A. Feb. 20, 2013) ("Usually, evidence from a period of abstinence is the best evidence for determining whether a physical impairment(s) would improve to the point of nondisability.") Although plaintiff's mental disorders persisted while plaintiff was sober, the record before the ALJ revealed that effects of those disorders were milder than they were during periods of active substance abuse, as evidenced by the fact that plaintiff returned to work after having lost his job due to his substance abuse (and not due to any mental incapacities). (Stip. ¶¶ 333; *see* Tr. 386, 425, 430, 445, 973, 1218, 1224.) Thus, plaintiff failed to sustain his burden of producing evidence sufficient to demonstrate that substance abuse was not material to his disability.[2] *See Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 (2d Cir. 2018) (summary order) (plaintiff failed to demonstrate that substance abuse was not a material factor where "medical records showed that her depression, anxiety, and bipolar disorder symptoms were well-managed through medications

---

[2]     Although plaintiff argues that his substance abuse was a "non-factor" in this case because he remained sober since November 2014, (Pl. Mem. at 12), substantial evidence shows that plaintiff abused alcohol during the first year and a half of the relevant period as described above.  Thus, pursuant to federal regulations, the ALJ properly considered the combined effects of all of plaintiff's impairments, including substance abuse, on his functioning. (Tr. 13-14; *see* 20 C.F.R. §§ 404.1535, 416.935, 404.1520(a)(4), 416.920(a)(4); *see also* SSR 13-2p.)

and that her functioning improved when she underwent substance abuse treatment"). Accordingly, the court finds that the ALJ properly found that plaintiff's substance abuse was a contributing factor material to the determination of disability. *See Johnson v. Berryhill*, No. 17-cv-6436P, 2018 WL 4275985, at *13 (W.D.N.Y. Sept. 7, 2018) (affirming ALJ's decision where ALJ considered psychologist and mental health counselors' treatment notes documenting mental health improvement during periods of abstinence and finding the "record was sufficient to permit the ALJ to conclude that [plaintiff's] substance use was material to the finding of disability, and substantial evidence supports the finding").

V.  **The ALJ Adequately Weighed Plaintiff's Mental Impairments in Determining Plaintiff's RFC**

Second, plaintiff contends that the ALJ disregarded the medical opinions that found limitations in plaintiff's mental abilities, and improperly substituted her own lay opinion in finding plaintiff not mentally limited in the RFC determination. (Pl. Mem. at 13-14.)

The court concludes that substantial evidence supports the ALJ's finding that plaintiff's mental impairments were non-severe and not limiting in the RFC determination. In assessing whether plaintiff's mental impairments were severe, the ALJ properly considered several medical opinions and weighed the

14

evidence when it was conflicting.  The ALJ reviewed evaluations
from two separate psychiatric consultative examiners.  (*Id.* at
14.)  In October 2015, Dr. Brickell Quarles reported that
plaintiff's past alcoholism "drastically" interfered with his
work history.  (*Id.*)  Dr. David Lefkowitz evaluated plaintiff as
well.  (*Id.*)  Both examiners reported that plaintiff suffered
from "some mental status deficits, including a depressed mood,
and some errors with spelling and/or calculation exercises."
(*Id.*)  In sum, after reviewing the records, the ALJ concluded
that plaintiff had "marked limitations with social functioning
and sustaining concentration, persistence, and pace during
periods of active substance abuse."  (*Id.* at 15.)

        In addition, the ALJ recognized that plaintiff had
"some symptoms of depression and anxiety independent of
substance abuse."  (*Id.* at 14.)  The ALJ found, however, that
with medication and in the absence of substance abuse,
plaintiff's mental health symptoms were "well-controlled" to the
point of non-severity.  (*Id.*)  The ALJ found that in the absence
of substance abuse, plaintiff had mild limitations: in
understanding, remembering, and applying information; in
interacting with others; in concentrating, persisting, and
maintaining pace; and in adapting and managing himself.  (*Id.* at
16.)  In reaching this conclusion, the ALJ duly reviewed the
plaintiff's psychiatric and treatment notes, records from SIMHS,

15

mental status findings from prison records, and plaintiff's own statements.  (*See id.* 14–17.)  After reviewing the evidence, the ALJ concluded that plaintiff did not satisfy the paragraph "B" criteria of §§ 12.04 and 12.06.  (*Id.* at 17.)  Further, the ALJ found that plaintiff received only "sporadic and inconsistent" treatment for his mental impairments, and that there was no evidence of plaintiff having only a minimal capacity to adapt to environmental changes.  (*Id.*)  Thus, plaintiff did not satisfy the paragraph "C" criteria of §§ 12.04 and 12.06.  (*Id.*)  In sum, the ALJ concluded that plaintiff's mental impairments, in the absence of substance abuse, were not severe and did not meet or medically equal listing 12.04 or listing 12.06.  (*Id.*)

The ALJ also properly accounted for plaintiff's mental limitations when determining plaintiff's RFC.  The ALJ correctly noted that the limitations identified in the paragraph B criteria are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process, whereas the mental RFC assessment used at steps 4 and 5 "requires a more detailed assessment" of the areas of mental functioning.  (*Id.* at 17.)  Accordingly, the ALJ noted that her RFC assessment "reflects the degree of limitation [the ALJ] found in the 'paragraph B' mental functional analysis."  (*Id.*)  Thus, the ALJ's RFC determination incorporated limitations discussed

earlier in the decision when the ALJ considered the severity of plaintiff's mental impairments.

In assessing plaintiff's mental limitations as relevant to the RFC determination, the ALJ asserted that the RFC assessment was supported, in part, by "stable mental status findings, high GAF scores . . . , and independent daily functioning."  (Tr. at 21.)  As to daily functioning, the ALJ concluded that plaintiff was capable of daily activities like personal care, simple meal preparation, managing appointments, paying bills, taking public transportation, and shopping, and had apparently returned to work in some capacity.  (*Id.* at 20.)

In reviewing the opinion evidence related to mental impairments, the ALJ accorded some weight to the opinion of the State Agency psychiatric consultant because the consultant did not differentiate between plaintiff's functioning during periods of active substance abuse and periods of sobriety, and posited severe mental impairments without due consideration of the fact that plaintiff's mental impairments were well-managed with medications in the absence of substance abuse.  (*Id.* at 17.)  Overall, the ALJ found that the consultant's broader conclusion of non-disability was consistent with the record.  (*Id.*)

Next, the ALJ duly accorded some weight to the GAF assessments, which assessed a wide range of scores from 50 to 80.  (*Id.*)  Even though the GAF assessments did not point to any

specific limitations, the scores -- which were indicative of mild to moderate symptoms -- were consistent with the record. (*Id.*)  Finally, the ALJ accorded little weight to the opinions of the psychiatric consultative examiners, Dr. Quarles and Dr. Lefkowitz, who assessed some moderate to severe mental limitations, particularly with social functioning.  (*Id.*)  The ALJ reasonably believed their opinions were based primarily upon plaintiff's own reports, especially given that neither examiner documented inappropriate behavior or interactions during their examinations.  *See Johnson v. Comm'r of Soc. Sec.*, 669 F. App'x 580, 581 (2d Cir. 2016) (summary order) (concluding that ALJ properly gave limited weight to physician opinion based primarily on the claimant's self-reported symptoms).  "Where the ALJ explains why he credited some portions of the medical opinion evidence and did not credit others, he has not substituted his own opinion for that of a medical source." *Samaru v. Comm'r of Soc. Sec.*, No. 18-cv-06321(KAM)(LB), 2020 WL 3051576, at *15 (E.D.N.Y. June 8, 2020); *Rivera v. Berryhill*, 312 F. Supp. 3d 375, 380 (W.D.N.Y. 2018) (finding that ALJ's determinations with respect to weighing of opinion evidence was proper where the "ALJ discussed the medical opinion evidence, set forth his reasoning for the weight afforded to each opinion, and cited specific evidence in the record which supported his determination").  The ALJ also reasoned that these opinions were

inconsistent with plaintiff's GAF scores and stable mental status findings discussed above, and plaintiff's apparent return to work in his previous field.  (Tr. at 17.)  The ALJ concluded that a finding of non-disability based on these mental impairments was "consistent with the stable mental status findings and daily activities."  (*Id.*)

To the extent that plaintiff disagrees with the ALJ's weighing of evidence, those disagreements are insufficient to overcome the substantial evidence reviewed by the ALJ.  For example, plaintiff notes that "[n]ot a single examining doctor [] presented a mental functional assessment consistent with" the ALJ's decision.  (Pl. Mem. at 13.)  The Second Circuit has explained, however, that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *see, e.g.*, *Dougherty-Noteboom v. Berryhill*, No. 17-cv-00243 (HBS), 2018 WL 3866671, at *9 (W.D.N.Y. Aug. 15, 2018) (affirming ALJ decision that did not "perfectly correspond" with medical opinions).  "The absence of a corresponding medical

opinion does not make it so the ALJ is relying on 'lay opinion'
to interpret medical data when making an RFC finding." *Perrelli
v. Comm'r of Soc. Sec.*, No. 18-cv-04370 (KAM), 2020 WL 2836786,
at *6 (E.D.N.Y. June 1, 2020) (quoting *Johnson v. Colvin*, 669 F.
App'x 44, 46 (2d Cir. 2016) (summary order)).  Plaintiff may
disagree with the ALJ's conclusion; however, the Court must
"defer to the Commissioner's resolution of conflicting evidence"
and reject the ALJ's findings "only if a reasonable factfinder
would have to conclude otherwise." *Morris v. Berryhill*, 721 F.
App'x 25, 29 (2d Cir. 2018) (summary order) (internal citations,
italics, and quotations omitted); *Krull v. Colvin*, 669 F. App'x
31, 32 (2d Cir. 2016) (summary order) (the deferential standard
of review prevents a court from reweighing evidence).

        For the reasons discussed above, the court concludes
that the ALJ adequately weighed the relevant documentary
evidence, treatment notes, and plaintiff's own testimony
regarding his mental limitations in assessing the severity of
plaintiff's condition and in making a RFC finding consistent
with the overall record.  *See, e.g.*, *Burmeister v. Comm'r of
Soc. Security Admin.*, No. 18-cv-1047 (JS), 2019 WL 4888636, at
*7 (E.D.N.Y. Sept. 30, 2019) (noting that the ALJ properly
considered "the documentary evidence, treatment notes, and
Plaintiff's own testimony regarding his limitations" in making a
RFC finding).  Accordingly, because the ALJ's findings were

20

consistent with the record as a whole, the court concludes that substantial evidence supported the ALJ's determination and affirms the ALJ's decision.

### VI.   The ALJ's RFC Finding as to Plaintiff's Physical Limitations was Supported by Substantial Evidence

Third, plaintiff contends that the ALJ again substituted her own lay opinion in "dismiss[ing] the wealth of evidence of chronic, poorly controlled jaw pain and headaches; Dr. Mahendra Misra's finding that it would be 'extremely difficult' for the plaintiff to engage in full-time work; Dr. Sujit Chakrabarti's finding that the plaintiff cannot lift/carry more than 10-15 pounds, and cannot stand/walk more than 2-4 hours a day; and EMG findings of neuropathies of the arms and legs," and finding plaintiff capable of performing light work. (Pl. Mem. at 17.)

The ALJ found that plaintiff was capable of fulfilling the limited demands of light work because, despite plaintiff's physical impairments, plaintiff did not show neurological deficits or an impaired gait, had "good relief" from treatments, was capable of daily activities like personal care, simple meal preparation, managing appointments, paying bills, taking public transportation, and shopping, and had apparently returned to work in some capacity.  (Tr. at 20.)

In assessing plaintiff's RFC, the ALJ accorded some weight to the opinion of Dr. Chakrabarti, an orthopedic consultative examiner, finding that his opinion that plaintiff could perform a narrow range of light work with standing or walking limited to two to four hours per day, minus his opinion that plaintiff was limited to lifting or carrying fifteen pounds, was consistent with the record.  (*Id.*)  The ALJ accorded little weight to the opinion of Dr. Misra, an orthopedic consultative examiner who determined that plaintiff would be disabled due to psychiatric problems and severe headaches from jaw pain.  (*Id.*)  First, the ALJ found that Dr. Misra's opinion was inconsistent with the reports that plaintiff experienced "good" pain relief with medication.  (*Id.*)  Second, the ALJ found that because Dr. Misra was not a psychiatrist, he was not qualified to assess the extent of plaintiff's psychiatric limitations, especially without performing a mental status evaluation.  (*Id.* at 20-21.)

Having reviewed the administrative record and ALJ's decision, this court concludes that the ALJ's RFC finding as to plaintiff's physical limitations was supported by substantial evidence.  Here, the ALJ duly evaluated evidence related to plaintiff's jaw pain and headaches.  (*See* Tr. 19-20.)  The ALJ considered that plaintiff had multiple jaw surgeries and thereafter experienced facial weakness, loss of sensation,

asymmetry, and headaches. (*Id.* at 19.) Moreover, the ALJ acknowledged that plaintiff's jaw pain and headaches persisted but were managed fairly well by medication. (*Id.*) Plaintiff asserts that the ALJ "dismissed the wealth of evidence of chronic, poorly controlled jaw pain and headaches," but does not elaborate or substantiate his assertion further. (Pl. Mem. 17.) On the contrary, the evidence suggests that plaintiff's jaw pain and headaches were not "poorly controlled": for example, plaintiff "reported fair symptom control" and in post-operative visits and other medical visits, reported that his "medications were helping to control his pain." (Tr. at 19.) Thus, the ALJ's analysis indicates that the ALJ properly considered evidence related to those symptoms.

In addition, the ALJ properly discounted Dr. Misra's opinion that it would be "extremely difficult" for plaintiff to engage in full-time work. (Tr. at 20.) First, the medical evidence suggested that plaintiff experienced "good" pain relief with medication from his jaw pain and headaches. (*See, e.g.*, *id.* 541, 544, 1224.) Second, the fact that Dr. Misra is not a psychiatrist and did not do a psychiatric evaluation on plaintiff undercut Dr. Misra's conclusion that plaintiff had "severe psychiatric problems." (*Id.* at 20-21.) Thus, the ALJ could reasonably discount Dr. Misra's opinion that it would be "extremely difficult" for plaintiff to engage in full-time work.

(*Id.* at 20.)  Moreover, Dr. Misra's opinion was also contradicted by the record, as plaintiff reported during multiple visits with doctors that he had returned to work in 2017.  (*See* Tr. 1218, 1224-25.)

Further, although the ALJ declined to credit Dr. Chakrabarti's opinion that plaintiff could carry only up to fifteen pounds, the ALJ's ultimate RFC determination of "light work" is not necessarily inconsistent.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).  The record is not conclusive as to plaintiff's ability to lift/carry: plaintiff told Dr. Misra that he could lift fifteen to twenty pounds (Tr. at 417); Dr. Chakrabarti opined that plaintiff could lift/carry ten to fifteen pounds (*id.* at 608); plaintiff's case manager said in a "Third Party Function Report" that plaintiff had no difficulties lifting (*id.* at 272), and; plaintiff testified at his hearing that he could lift ten pounds at most (*id.* at 47).  Thus, the record presented conflicting medical evidence, which the ALJ was permitted to weigh and evaluate in assessing plaintiff's RFC.  *See Butler v. Comm'r of Soc. Sec.*, 2017 WL 2834482, at *8 (N.D.N.Y. June 29, 2017) ("It is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence.");

*Sirris v. Comm'r of Soc. Sec.*, No. 18-cv-1087-MJR, 2020 WL
5105110, at *8 (W.D.N.Y. Aug. 31, 2020) ("Because the medical
opinions and other evidence of record offered differing
descriptions of plaintiff's functional limitations, it was the
ALJ's role to weigh and resolve conflicts in the evidence.").

In sum, substantial evidence supported the ALJ's
conclusion that plaintiff had severe physical impairments of
degenerative disc disease of the cervical spine, degenerative
joint disease of the knees, neuropathy, and status-post mandible
fracture, and specific findings with respect to plaintiff's
resulting functional abilities, like lifting and carrying,
walking and standing, and using arm and leg controls.
Accordingly, substantial evidence including, plaintiff's work
activity, normal physical examination findings, including full
strength and normal gait, and post-surgical improvement,
supported the ALJ's RFC finding.  *See Wright v. Berryhill*, 687
F. App'x 45, 48 (2d Cir. 2017) (summary order) (physical
examination findings, including normal strength and intact
sensation supported the RFC assessment for light work).

## CONCLUSION

For the reasons set forth above, the court respectfully denies plaintiff's motion for judgment on the pleadings, and grants the Commissioner's cross-motion for judgment on the pleadings.  The Clerk of Court is respectfully directed to enter judgment in favor of the defendant Commissioner and close this case.

SO ORDERED.


_____/s/_____

KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York


Dated:      November 25, 2020
            Brooklyn, New York